**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International Inc., | CV 11-1281-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| I-70 Hotel Corp.; MAS Hotel Group Corp.; Shamir Bhakta; Kansas Hotel Corp.; Naresh Bhakta; Mrudulaben Bhakta, | |
| Defendants. | |

The court has before it defendants Kansas Hotel Corporation ("KHC"), Naresh Bhakta, and Mrudulaben Bhakta's ("the Kansas defendants") motion to dismiss for lack of personal jurisdiction (doc. 88), plaintiff's response (doc. 96) and separate statement of facts (doc. 97), and the Kansas defendants' reply (doc. 99) and response to statement of facts (doc. 100).[1]

**I**

This action centers around two hotels in Kansas and their allegedly unauthorized use of Best Western symbols. Plaintiff is an Arizona corporation with its principal place of

---

[1] The Kansas defendants ask us to strike multiple portions of plaintiff's response pursuant to Rule 12(f), Fed. R. Civ. P. That rule permits us to strike scandalous, impertinent, redundant, or immaterial material "from a pleading." A response to a motion is not a pleading. Defendants' requests to strike are denied.

1  business in Arizona.  Plaintiff authorizes its member hotels to use Best Western symbols.
2  A hotel must apply to become a Best Western member.

3  Naresh ("Nick") Bhakta created I-70 Hotel Corporation ("I-70") in January 2011. I-70
4  is owned in part by Nick and his wife, Mrudubalen ("Mary") Bhakta.  That same month, I-70
5  purchased the Mid-America Inn.  Plaintiff alleges that once the Mid-America Inn was
6  purchased, its Best Western membership automatically terminated. I-70 submitted a new
7  membership application to plaintiff in February 2011.  The application was denied.
8  According to plaintiff, it notified I-70 that it must stop using Best Western symbols, but a
9  visit to the Mid-America Inn in June 2011 revealed that Best Western signs and items
10 displaying the Best Western logo remained on the property.

11 In June 2010, Nick incorporated MAS Hotel Group ("MAS").  Both Nick and Mary
12 were identified as shareholders.  MAS purchased the Heart of America Inn in March 2011.
13 MAS did not submit a membership application to plaintiff.  Plaintiff notified MAS in April
14 2011 that it was required to remove all Best Western symbols from the hotel.  Plaintiff
15 alleges that in July 2011, MAS, through Mary and Nick, misrepresented in membership
16 applications to the Days Inn and the Knights Inn that the Heart of America Inn was affiliated
17 with Best Western.

18 Plaintiff filed this action on June 28, 2011 (doc. 1).  The original complaint named I-
19 70, MAS, and Shamir Bhakta (Nick and Mary's son) as defendants.  An amended complaint
20 was filed November 30, 2011 (doc. 39).  On October 3, 2011, Nick formed KHC and was
21 appointed its registered agent.  Mary is one of KHC's directors.  Four days later, I-70 and
22 MAS conveyed the Mid-America Inn and the Heart of America Inn to KHC.  Nick signed
23 the documents on behalf of I-70 and MAS, and Mary signed the documents on behalf of
24 KHC.

25 Magistrate Judge Anderson granted plaintiff's motions to amend the scheduling order
26 and file a second amended complaint ("SAC") on April 9, 2012 (doc. 72).  Plaintiff filed the
27 SAC on April 10, 2012 (doc. 73).  The action was then reassigned to this court.  The SAC
28 alleges that new defendants KHC, Nick, and Mary violated the Uniform Fraudulent Transfer

- 2 -

1  Act ("UFTA") by transferring both hotels to KHC with the intent to defraud plaintiff and
2  hinder enforcement of any judgment that it receives in this action. SAC ¶¶ 186-226. In
3  addition, the SAC alleges that Nick and Mary committed federal and state trademark
4  infringement by representing to the Days Inn and the Knights Inn that the Heart of America
5  Inn was a Best Western member. SAC ¶¶ 62, 125. The Kansas defendants move to dismiss
6  pursuant to Rule 12(b)(2), Fed. R. Civ. P. for lack of personal jurisdiction.

**II**

8        The plaintiff bears the burden of showing that personal jurisdiction is appropriate.
9  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). When a
10 motion to dismiss for lack of personal jurisdiction is decided without an evidentiary hearing,
11 the plaintiff must present a prima facie showing of personal jurisdiction. Id. A plaintiff
12 cannot rest on bare allegations in the complaint. However, we accept uncontroverted
13 allegations as true and resolve factual conflicts by accepting plaintiff's version of events. Id.
14       When no federal statute governs personal jurisdiction, we apply the law of the state
15 where this court sits. Id.; see also Fed. R. Civ. P. 4(k)(1)(A). In Arizona, personal
16 jurisdiction is permitted to the extent allowed by the United States Constitution. See Ariz.
17 R. Civ. P. 4.2(a). Plaintiff argues that we have specific jurisdiction over the Kansas
18 defendants. Accordingly, plaintiff must show that the Kansas defendants have minimum
19 contacts with Arizona such that exercising jurisdiction over them will not "offend traditional
20 notions of fair play and substantial justice." Schwarzenegger, 374 F.3d at 801 (quoting Int'l
21 Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). To do so, plaintiff
22 must show (1) that defendants "purposefully direct[ed] [] activities or consummate[d] some
23 transaction with the forum or resident thereof; or perform[ed] some act by which [t]he[y]
24 purposefully avail[ed] [themselves] of the privilege of conducting activities in the forum,
25 thereby invoking the benefits and protections of its laws;" and (2) that the claim arises from
26 or relates to the defendants' "forum-related activities." Id. at 802. If the plaintiff is
27 successful, then the burden shifts to the Kansas defendants, who must "present a compelling
28 case that the exercise of jurisdiction would not be reasonable." Id. (internal quotation marks

1    and citation omitted).

2    We apply purposeful direction analysis to cases sounding in intentional tort, such as
3    trademark infringement. See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228
4    (9th Cir. 2011) (applying purposeful direction analysis to a copyright infringement claim, "a
5    tort-like cause of action"); Revolution Distrib. v. Evol Nutrition Assocs., Inc., CV-11-2120-
6    PHX-JAT, 2012 WL 2368634, at *4 (D.Ariz. June 21, 2012) (applying purposeful direction
7    analysis to a trademark infringement claim). It is not certain that the Ninth Circuit would
8    apply purposeful direction analysis to a fraudulent transfer claim. See Grassmueck v.
9    Bishop, CV-09-1257-HU, 2010 WL 1742091, at *4 (D.Or. Apr. 5, 2010) (citing United
10   States v. Neidorf, 522 F.2d 916, 918 (9th Cir. 1975) ("the liability of the transferee of a
11   fraudulent conveyance. . . [is] based not upon tort but upon quasi-contract.")) (discussing
12   difference between Fifth and Sixth Circuits as to whether the purposeful direction analysis
13   should be applied to a fraudulent transfer claim). Here, both parties have applied purposeful
14   direction analysis to the fraudulent transfer claim. This seems appropriate, as allegations of
15   fraudulent transfer are effectively allegations of an intentional tort. See Kremen v. Cohen,
16   5:11-cv-05411-LHK, 2012 WL 44999, at *7 (N.D.Cal Jan. 7, 2012) (characterizing UFTA
17   violation as intentional tort and applying purposeful direction analysis).

18   We analyze purposeful direction under a three-part test originating from Calder v.
19   Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984). Under the Calder effects test, plaintiff must
20   allege that the Kansas defendants "(1) committed an intentional act, (2) expressly aimed at
21   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the
22   forum state." Schwarzenegger, 374 F.3d at 803 (citing Dole Food Co., Inc. v. Watts, 303
23   F.3d 1104, 1111 (9th Cir. 2002)). An intentional act is one done with the "intent to perform
24   an actual, physical act in the real world." Id. at 806. Here, plaintiff alleges that Nick and
25   Mary Bhakta submitted applications with the Days Inn and the Knights Inn that referred to
26   the Heart of America Inn as a Best Western property. The submission of an application is
27   an intentional act. Plaintiff also alleges that Nick (signing on behalf of I-70) and Mary
28   (signing on behalf of KHC) fraudulently sold the Heart of America and Mid-America Inns

to KHC. The alleged fraudulent transfer of the hotels is also an intentional act. See Amoco Chem. Co. v. Tex Tin Corp., 925 F. Supp. 1192, 1200 (S.D.Tex. 1996) (alleged out-of-state asset transfer to avoid company obligations was an intentional act under Calder).

Next, plaintiff must show that the Kansas defendants expressly aimed their conduct at Arizona. This prong is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Dole Food, 303 F.3d at 1111 (internal quotation marks and citation omitted). Plaintiff has alleged sufficient facts to suggest that KHC, Nick, and Mary expressly aimed their allegedly fraudulent transfer of the hotels at the plaintiff in Arizona. Specifically, plaintiff alleges that the Kansas defendants transferred the hotels to KHC just four days after its incorporation in order to prevent plaintiff from obtaining a meaningful judgment in the action before this court.[2]

The same cannot be said about the allegations of trademark infringement against Nick and Mary. Plaintiff alleges that Nick and Mary misrepresented in new membership applications that the Heart of America Inn was affiliated with Best Western. Although plaintiff alleges that Nick and Mary were aware that plaintiff was an Arizona resident, this alone is insufficient. See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir 2010) (that harm from copyright infringement is foreseeable within the forum is not enough; conduct must be "expressly aimed at the forum"). Plaintiff has not shown that Nick or Mary individually targeted plaintiff in Arizona by submitting the applications. See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1088 (9th Cir. 2000) (discussing importance of "individualized targeting" in satisfying Calder effects test). Plaintiff does not allege that any Arizonans saw the applications, or that plaintiff saw the applications. Plaintiff does not allege that the Bhaktas' actions in using plaintiff's name on the applications was an act of infringement that placed them "in direct competition" with

---

[2] While Nick and Mary attempt to controvert these allegations by affidavit, we must accept plaintiff's version of events as true. See Schwarzenegger, 374 F.3d at 800.

plaintiff in Arizona. See Brayton Purcell, 606 F.3d at 1130-31 (copying California plaintiff law firm's website placed defendant law firm in direct competition for California clients, and constituted express aiming of copyright infringement at California). And plaintiff does not allege that the other hotel chains were headquartered in Arizona. We conclude that the plaintiff has not presented a prima facie showing that the Bhaktas' use of the Best Western name on franchise applications was conduct expressly aimed at Arizona.

Under the final prong of the Calder effects test, plaintiff must show that the Kansas defendants' actions caused harm that they knew was likely to be suffered in the forum state. A corporation can suffer economic harm both where its principal place of business is located and where the acts occurred. Mavrix Photo, 647 F.3d at 1231. Harm sufficient to establish personal jurisdiction may be felt in multiple forums. Id. Contrary to the Kansas defendants' argument, "the 'brunt' of the harm need not be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006). Here, plaintiff alleges that the harm from being unable to collect any judgment it might receive as the result of the Kansas defendants' fraudulent transfer would be felt here in Arizona, both the location of this action and plaintiff's principal place of business. We conclude that plaintiff has shown sufficient jurisdictional harm in Arizona for the fraudulent transfer claim.

Finally, we address whether plaintiff has shown that the fraudulent transfer claim arises from the Kansas defendants' forum-related activities. See Schwarzenegger, 374 F.3d at 802. Despite plaintiff's failure to expressly argue this point in their response, we conclude that it has sufficiently alleged that the fraudulent transfer claim arises from the Kansas defendants' allegedly fraudulent transfer of the hotels to KHC. Indeed, the fraudulent transfer claim would not exist "but for" the sale of the hotels, which as discussed above was expressly aimed at Arizona.

### III

Alternatively, plaintiff argues that personal jurisdiction can be obtained over Nick and Mary Bhakta because I-70 and MAS are their alter egos. An officer, director, or shareholder

1  of a corporation may be liable for the corporation's torts if plaintiff shows that (1) the
2  individual participated in or authorized the actions or (2) the corporation is the alter ego of
3  the individual. Maloof v. Raper Sales, Inc., 113 Ariz. 485, 488, 557 P.2d 522, 525 (1976).
4  If I-70 and MAS are mere alter egos, plaintiff argues we can impute both corporations'
5  conduct (and thus, our personal jurisdiction over these defendants) to Nick and Mary Bhakta.
6  To disregard the separateness of the corporate form and find that I-70 and MAS are alter
7  egos, plaintiff must show "(1) unity of control and (2) that observance of the corporate form
8  would sanction a fraud or promote injustice." Gatecliff v. Great Republic Life Ins. Co., 170
9  Ariz. 34, 37, 821 P.2d 725, 728 (1991).

10  Plaintiff argues that it has established unity of control because it alleged in its
11 complaint that I-70 and MAS are alter egos, because Nick is the registered agent for MAS
12 and I-70, and because both Nick and Mary have an ownership interest in MAS and I-70.
13 Stating a corporation is an alter ego, however, is a legal conclusion rather than a factual
14 allegation. The fact that both Nick and Mary were a part of I-70 and MAS is not dispositive.
15 See United States v. Bestfoods, 524 U.S. 51, 61-62, 118 S. Ct. 1876, 1884 (1998)
16 (duplication of corporate officers does not necessarily mean that the corporate veil between
17 a parent and its subsidiary will be pierced). Plaintiff has not presented any additional
18 evidence to support its allegations of unity of control. For example, plaintiff has not shown
19 that either Nick or Mary commingled personal and corporate funds or diverted company
20 property for personal use. See Activator Methods Int'l, Ltd. v. Future Health, Inc., CV-11-
21 1379-PHX-GMS, 2012 WL 715629, at *3 (D.Ariz. Mar. 6, 2012) (collecting cases stating
22 that corporation was not an alter ego of an owner absent evidence of commingling of funds
23 or abuse of corporate structure for improper purposes). Moreover, failing to recognize I-70
24 and MAS as alter egos of Nick and Mary would not accomplish fraud or promote injustice.
25 Plaintiff has asserted trademark infringement claims against I-70 and MAS, and both have

26
27
28

already appeared as defendants in this action.[3]

This does not necessarily mean, however, that we cannot exercise personal jurisdiction over Nick and Mary Bhakta on the trademark infringement claims. Although personal jurisdiction must be present for "each claim asserted against a defendant," the Ninth Circuit has explicitly adopted the doctrine of pendent personal jurisdiction. Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180-81 (9th Cir. 2004). The doctrine permits a court to "assert pendent personal jurisdiction over a defendant with respect to a claim. . . so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Id. at 1180. The facts "need not exactly track the facts underlying the claims for which there is personal jurisdiction, so long as the core facts are the same." Fiore v. Walden, 657 F.3d 838, 858 (9th Cir. 2011). Here, the core facts underlying plaintiff's fraudulent transfer claim (the transfer of the hotels to KHC in October 2011) differ from the core facts underlying Nick and Mary's alleged trademark infringement (submission of franchise applications using Best Western's name in July 2011). As a result, pendent personal jurisdiction is not available for the trademark infringement claims.

**IV**

Because plaintiff has presented a prima facie case for personal jurisdiction over the Kansas defendants on the fraudulent transfer claim, the burden shifts to the Kansas defendants to show that exercise of jurisdiction would be unreasonable. Schwarzenegger, 374 F.3d at 802. We consider seven factors in assessing reasonableness:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

---

[3] This includes an allegation that MAS used the Best Western name on the applications submitted to the Days Inn and the Knights Inn. SAC ¶ 62.

1  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting
2  Dole Food, 303 F.3d at 1114)).

3      First, as discussed above, the Kansas defendants purposefully directed their actions
4  in allegedly fraudulently transferring the hotels to plaintiff, which would cause harm in
5  Arizona. This constitutes purposeful injection. Id. at 1080. Acts allegedly designed to
6  thwart plaintiff's successful recovery in this action are a substantial injection into the judicial
7  affairs of this forum. Next, we consider the burden on the Kansas defendants of litigating
8  in Arizona. Given advances in communication and travel, the burden of out-of-state
9  litigation "is substantially less than in days past." Id. (citation omitted). Indeed, the Kansas
10 defendants have retained the same lawyers as the original defendants, including Arizona
11 counsel. Accordingly, this factor does not tip heavily in the Kansas defendants' favor. The
12 conflict with the sovereignty of Kansas is at most minimal. Both states have enacted the
13 UFTA, which forms the basis of plaintiff's fraudulent transfer claim. See A.R.S. § 44-1001;
14 Kan. Stat. Ann. § 33-201. By contrast, this court has an interest in litigating this claim,
15 which alleges that assets were transferred precisely to avoid any judgment entered for
16 plaintiff in this court. Similarly, this action has been pending in this district for a year.
17 Permitting the fraudulent transfer claim to proceed here will promote efficiency by obviating
18 the need for a new court action in another state, which is in the interest of the plaintiff in
19 obtaining convenient relief. Finally, whether an alternative forum exists only becomes
20 relevant if litigation in the forum state is unreasonable. CollegeSource, 653 F.3d at 1080.
21 Because we conclude that defendants have not shown that litigation in Arizona would be
22 unreasonable, we do not address this final factor.

**V**

24      In conclusion, plaintiff has met its burden of showing a prima facie case for personal
25 jurisdiction over the Kansas defendants on the fraudulent transfer claim. Plaintiff has not,
26 however, met its burden of showing that personal jurisdiction over Nick and Mary Bhakta
27 on the trademark infringement claims is appropriate, and pendent personal jurisdiction is
28 unavailable.

- 9 -

1    Plaintiff asks for jurisdictional discovery to depose the Bhaktas to "determine the full extent of trademark infringement that occurred as a result of their conduct." Response at 16. Courts should deny requests for jurisdictional discovery when a party fails to show that additional discovery would uncover necessary facts to prove that a court has personal jurisdiction. MMI, Inc. v. Baja, Inc., 743 F. Supp. 2d 1101, 1113 (D.Ariz. 2010) (citing Autogenomics, Inc. v. Oxford Gene Tech., Ltd., 566 F.3d 1012, 1023 (Fed. Cir. 2009)). Here, plaintiff has not made any showing how learning more about "the full extent" of infringement resulting from Nick and Mary's submission of the franchise applications will prove that these acts were expressly aimed at Arizona. And plaintiff's discovery of who is currently employed at the hotels and the "true nature" of the asset transfers to KHC will not uncover necessary facts to find that I-70 and MAS are alter egos of Nick and Mary. Accordingly, we deny plaintiff's request for jurisdictional discovery.

**IT IS ORDERED GRANTING IN PART** Kansas Hotel Corporation, Naresh Bhakta, and Mrudulaben Bhakta's motion to dismiss for lack of personal jurisdiction (doc. 88). The fraudulent transfer claim against Naresh Bhakta, Mrudulaben Bhakta, and Kansas Hotel Corporation remains. The trademark infringement claims against Naresh Bhakta and Mrudulaben Bhakta are **DISMISSED** without prejudice for lack of personal jurisdiction.

DATED this 19th day of July, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 10 -